**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RASZELL REEDER,

                              Plaintiff,

        v.                                                      No. 09-CV-575
                                                                   (DNH/DRH)

DALE ARTUS, Superintendent; THOMAS
LAVALLE, Deputy Superintendent; STEVEN
RACETTE, Deputy Superintendent of Security;
TARA BROUSSEAU, I.G.P. Supervisor; D.
HOLDRIDGE, Captain; UHLER, Captain;
LAMORA, Lieutenant; LYNCH, Lieutenant;
HICKS, Sergeant; MENARD, Sergeant; BAKER,
Sergeant; MATOTT, Sergeant; MARCIL,
Sergeant; GREGORY SAVAGE, Mental Health
Counselor; J. SPRENGER, Chaplain; RONALD
DURMONT, Registered Nurse and Examiner;
MOLLER, Correctional Officer; TUCKER,
Correctional Officer; MARTIN, Correctional
Officer; SHUTTS, C.O.; GROM, C.O.;
POUPORE, Correctional Officer; BOULRICE,
C.O.; MOSELEY, C.O.; TRUDEAU, Correctional
Officer; R. TRUDEAU, Correctional Officer;
ALLEN, Correctional Officer; MINER,
Correctional Officer; GITTENS, Correctional
Officer; BESAW, Correctional Officer;
TETREAULT, C.O.; JOHN DOE, C.O.;[1] BODET,
Correctional Officer; RICHARD ROY, Inspector
General; NUNEZ, Inspector General; JAMES
MORGAN, Associate Director of Quality
Management; JOANNE WALDRON, Unit Chief;
and MAUREEN BOSCO, Forensic Program
Administrator;

                              Defendants.

_____

_____

        [1] Defendant John Doe has neither appeared nor been served.  Fed. R. Civ. P. 4(m)
requires that a complaint be served upon a defendant within 120 days after the complaint
is filed or the complaint may be dismissed as to any unserved defendant without prejudice.
See also N.D.N.Y.L.R. 4.1(b). The complaint here was filed on May 18, 2009.  Compl.  No
summons was executed upon the defendant.  More than 120 days have passed since the
complaint was filed.  Accordingly, it is recommended that the complaint be dismissed as to
John Doe without prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).

**APPEARANCES:**                          **OF COUNSEL:**

RASZELL REEDER
Plaintiff Pro Se
94-A-6388
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 14902

HON. ANDREW M. CUOMO                      JUSTIN C. LEVIN, ESQ.
Attorney General for the                  Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

    Plaintiff pro se Raszell Reeder ("Reeder"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, thirty-eight DOCS employees, violated his

constitutional rights under the First, Eighth, and Fourteenth Amendments.  Compl. (Dkt. No.

1).  Presently pending are the moving defendants'[3] motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  Dkt. No. 65.  Reeder opposes the motion.  Dkt. No. 69.

For the following reasons it is recommended that defendants' motion be granted in part and

denied in part.

---

    [2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

    [3]See note 1 supra.

# I. Background

The facts are related herein in the light most favorable to Reeder as the non-moving party.  See subsection II(A) infra.

## A. Excessive Force

On April 22, 2009, Reeder assaulted defendant Poupore, a corrections officer. by throwing feces on him during the breakfast hour.  Compl. ¶ 17; Dkt. No. 69, ¶ 14. Defendant Hicks, a Sergeant, was notified to respond to the assault, but defendant Menard, also a Sergeant, reported to Reeder's cell instead.  Compl. ¶ 17.  At Reeder's cell, Menard observed that the lights in the back of the cell were off, a safety hazard which also precluded video recording.  Id. ¶¶ 4, 11, 22; Dkt. No. 69, ¶ 2.

After the assault on Poupore occurred, Reeder informed defendants Matott, a sergeant, and Sprenger, a chaplain, as well as mental health staff, and Menard that he would comply with their orders and exit his cell without resistance.  Compl ¶¶ 10, 21.  Nevertheless, Menard deployed chemical weapons and an extraction team into Reeder's cell because Reeder allegedly failed to comply with Menard's direct orders to release his food tray and a carton of milk in which the feces were believed to have been stored.  Id. ¶¶ 3, 8, 18; Dkt. No. 69, ¶ 7.  Reeder contends that there was never a container of milk with feces in his possession and this was solely a ploy to allow Menard to dispense chemical agents into his cell.  Compl. ¶ 18; Dkt. No. 69, ¶¶ 2, 7.  Menard responded to the call instead of Hicks to retaliating against Reeder and to cause Reeder serious injury.  Compl. ¶ 19.

After Menard deployed the chemical agents, an extraction team composed of

3

defendants Martin, Shutts, Tucker, Grom, and Moller, all corrections officers, entered the cell. Compl. ¶¶ 4, 8-9, 20, 22, 25-26. When the team entered the cell behind a plexi-glass shield, Reeder pushed the shield from his cell in self-defense and then lay on the floor without further resistance. Id. ¶ 11. The incident report indicated that Martin pushed Reeder to the floor and took control of his upper torso and head area; Shutts assisted with the restraints; Tucker took control of Reeder's arms and placed them behind his back; and Moller videotaped the entire extraction. Id. ¶¶ 8-9. Reeder alleges that Martin punched him in the face, slammed his head on the ground, kneed him in the head, and continued to assault him as he lie on the ground; Shutts attempted to pull his left knee out of his socket; Tucker squeezed his left hands with great force, attempting to break them; Grom used his body to block the camera's view of the attack; and Moller stood in the dark portion at the back of his cell, purposefully omitting the recording or certain events during the extraction. Id. ¶¶ 4, 8, 9, 22, 24-26. Reeder contends the assault was in retaliation for his assault on Poupore. Dkt. No. 69, ¶ 2.

### B. Medical Care

After the incident, Reeder was examined by defendant Durmont, a nurse. Compl. ¶¶ 5, 12. Durmont's report indicated that he examined Reeder, his eyes were reddened from exposure to the chemical agents, and Reeder was sweating. Id. ¶ 12. Durmont found nothing wrong with Reeder during the examination. Id. ¶ 5. However, Reeder alleges this examination was cursory as Durmont failed to note the blood coming out of his ear, his swollen fingers, knee and face, his scars, his blackened eyes, or the pain in his fingers, face and neck. Id. ¶ 5; Dkt. No. 69, ¶ 6. Additionally, Durmont never reexamined Reeder after

4

April 22 to ensure that there were no new injuries and that the pre-existing ones had not worsened.  Compl. ¶ 12.

### C. Conditions of Confinement

After the examination, Reeder was given a cell depravation order and was placed into a cell with no hygiene supplies, no state clothing, and no grievance forms, pens, paper, or regular diet for six days.  Dkt. No. 69, ¶ 14.  Additionally, from April 22 until May 12, 2009, Reeder's food was inadequate in that it either was not delivered or was completely frozen, very hot, or contaminated with dirt.  Compl. ¶ 2.  Defendant Boulrice, a corrections officer, dropped Reeder's milk on the floor, refused to replace it, and refused to feed him breakfast on April 18 as well as refusing to feed him breakfast, lunch, and dinner on April 23 and dinner on April 24.  Id. ¶¶ 13, 28, 30, 31; Dkt. No. 69, ¶ 8); (2.  Defendant Moseley, a corrections officer, did not give Reeder a new tray after Reeder fought with Boulrice on April 18, denied him breakfast on April 18 and 23, and denied him lunch on April 22 and 23.  Compl. ¶¶ 13, 30; Dkt. No. 69, ¶ 8.  Defendants Holdridge, a Captain, and Baker, a Sergeant, failed to act after Reeder complained about not receiving food on April 23.  Compl. ¶¶ 13, 30; Dkt. No. 69, ¶ 8.  Defendant Gittens, a corrections officer, denied him dinner on April 23.  Compl. ¶¶ 13, 30; Dkt. No. 69, ¶ 8); (5.  Defendant Trudeau, a corrections officer, denied him dinner on both April 24 and 29.  Compl. ¶¶ 13, 30; Dkt. No. 69, ¶ 8.  Poupore denied him dinner on April 29.  Compl ¶ 13; Dkt. No. 69, ¶ 8); (7.  Allen denied him breakfast and lunch on May 1.  Compl. ¶¶ 13, 31; Dkt. No. 69, ¶ 8); (8. Defendants Tetreault and Besaw, corrections officers, denied him breakfast and lunch, serving him the wrong meals on May 3 and falsifying the feed up sheet to indicate he was

5

properly fed.  Compl. ¶¶ 13, 31; Dkt. No. 69, ¶ 8); (9.  Defendants R. Trudeau and Miner,

corrections officers, denied Reeder food meals.  Compl. ¶¶ 13, 31; Dkt. No. 69 ¶ 8.

Defendants Artus, Lavalle, and Racette, the Superintendent and Deputy Superintendents,

failed to act after being notified specifically about the food situation.  Compl. ¶ 13.[4]  Reeder

also contends that on April 25 through 28, April 30, and May 2, the food that he received

was scarce and also tainted.  Compl. ¶ 13.


### D. Property

   Reeder also alleges that Hicks and an unknown officer stole his personal property, lying

about the fact that it was allegedly contaminated and required disposal in the garbage.

Compl. ¶ 32; Dkt. No. 69, ¶ 13.  Hicks' actions were approved by Menard.  Dkt. No. 69, ¶

13.  These actions were in retaliation for the assault on defendant Poupore.  Id.


### E. Grievances

   Reeder contends that "Clinton Prison Administration is a facility that hid evidence and

agree with inmates being assaulted, harass [sic], never showing concern, accepting

captains, Lts., Sgts.,  Correction Officers falsifying investigation reports.  They always doing

incomplete investigations, it is a facility administration and with corrections personnel thats

committed to retaliation conspiracy."  Compl. ¶ 14.  Reeder alleges that Artus, Lavalle, and

Racette received constant complaints and took no action, refused to approve the initiation

of investigations which were essential for inmates filing grievances, and failed to intervene

---

[4] Reeder also asserts that defendants Uhler, Lynch, Hicks, Marcil, Allen, and Bodet
were involved in his denial of meals; however no specific dates or meals were alleged.

in any way when the other named defendants denied Reeder food for almost a month.  Dkt. No. 69, ¶¶ 3, 10.  Additionally, Uhler, Holdridge, Lynch, Hicks, Marcil, Baker, Menard, and Matott also allegedly knew about Reeder's deprivation of meals and failed to remedy the situation.  Id.  ¶ 3.  Lastly, defendant Brousseau failed in her duties as IGP Supervisor to act on grievances in a timely and appropriate manner and provide inmates with investigations when they filed grievances, as defendants Artus and Racette were notorious for unanimously rejecting any request for an investigation.  Id.; Compl. ¶ 7.

### F. Other Claims

Reeder also contends that while incarcerated, defendants tampered with  his mail. Compl. ¶ 14.  Additionally, as the administration was aware of the many investigations Reeder was seeking, their summary denials and their refusal to intervene in the alleged retaliation deprived Reeder of his Equal Protection rights.  Id.  ¶ 16.  Moreover, the administration failed in their duties to file criminal charges against employees on behalf of inmates, like Reeder, who were subjected to retaliation.  Id.  ¶ 1.  Lastly, Reeder contends that he was constantly harassed by R. Trudeau, Poupore, and Martin because they would loudly bang on his cell in retaliation for his assault on Poupore.  Dkt. No. 69, ¶ 4.

### II. Discussion

Reeder contends that his First Amendment rights were violated when defendants retaliated against him by subjecting him to excessive force, denying him food, and refusing to provide him with investigations and tampered with his mail.  Reeder contends his Eighth

Amendment rights were violated when various defendants subjected him to excessive force, when Durmont was deliberately indifferent to his serious medical needs, and denied him to acceptable conditions of confinement.  Reeder finally claims that his Fourteenth Amendment rights were violated when defendants confiscated his property without due process and denied him equal protection.  Defendants contend that  Reeder has failed to state any constitutional claims; Reeder has failed to allege the personal involvement of Waldron, Roy, Morgan, and Bosco; and they are entitled to qualified immunity.

### A. Legal Standard

"The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . .

8

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

9

**B. Personal Involvement**

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

**1. Roy**

Reeder claims that defendant Roy, the DOCS Inspector Generally, was personally involved in his constitutional violations by failing to respond, or investigate, any of the assault claims which Reeder provided to him.  Compl. ¶¶16, 33; Dkt. No. 12.  Receiving grievances, without more, is insufficient to establish personal involvement as there exists no

10

allegation that the proposed defendants took any action.  See Bodie v. Morgenthau, 342 F.
Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only
where a supervisory official received, reviewed, and responded to a prisoner's complaint);
Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter
or similar complaint were enough, without more, to constitute personal involvement, it would
result in liability merely for being a supervisor, which is contrary to the black-letter law that §
1983 does not impose respondeat superior liability.") (citations omitted).  Accordingly, this
contention is insufficient to establish personal involvement.  As no other bases for
involvement were advanced, and the record does not indicate that any other exist,
defendants' motion should be granted on this ground.

### 2. Waldron, Morgon, and Bosco

In his response, Reeder alleges that these three defendants denied him mental health
treatment for his mental health condition which subsequently worsened.  Dkt. No. 69, ¶ 11.
The complaint fails to indicate or establish any theory of personal involvement.  The
gravamen of Reeder's complaints are that these defendants "knew" about the things that
were occurring within the correctional facility and failed to act. Compl. ¶ 34.   This
essentially attempts to establish personal involvement based upon the supervisory role
these defendants occupied, which is inappropriate.  Wright, 21 F.3d at 501 (holding that a
position in a hierarchical chain of command, without more, is insufficient to support a
showing of personal involvement).  The complaint does not contend that they were
personally involved in the alleged violations, created unconstitutional policies, or were
grossly negligent in supervising subordinates.  As such, Reeder has failed to establish their

11

personal involvement and defendants' motion on this ground should be granted.

## C. First Amendment

### 1. Retaliation[5]

Reeder claims that he was assaulted, denied proper medical treatment and food, and had his property stolen and mail tampered with in retaliation for his assault on Poupore. Compl. ¶ 2, 13, 19; Dkt. No. 69, ¶¶ 2, 13-14.  To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); see also Lipton v. County of Orange, 315 F. Supp. 2d 434, 447-48 (S.D.N.Y. 2004) (applying First Amendment retaliation factors to a pretrial detainee complaint).  Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008).  Conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Reeder has failed to allege facts sufficient to support a retaliation claim. First, his actions in assaulting another corrections officer are not the sort of thing protected by the constitution.  Thus, for any subsequent incident for which Reeder asserts the assault

---

[5] Defendants also contend that the intracorporate doctrine shields them from liability.  Defs. Mem. of Law (Dkt. No. 65-1) at 9-10.  It is recommended herein that this claim be denied on the merits and, therefore, this contention will not be further addressed.

was the basis of the retaliation, such claims are without merit.  Second, even if can be said

that Reeder filed grievances in the form of requests for investigations, such actions are still

inadequate to establish an actionable cause.  While filing grievances and lawsuits are

actions protected by the First Amendment, Reeder has failed specifically to alleged who he

filed grievances against and when they were filed.  Third, Reeder has also failed to allege

any facts to establish that any of defendants' alleged adverse actions were motivated by, or

temporally related to, any constitutionally protected conduct.  Thus, all Reeder has proffered

are conclusory allegations to demonstrate that he was the victim of retaliatory conduct.

These conclusory allegations, without more, are insufficient to maintain the present claims.

Jackson, 549 F. Supp. 2d at 214.

  Accordingly, defendants' motion should be granted as to these claims.


## 2. Mail Tampering

  "A prisoner's right to the free flow of incoming and outgoing mail is protected by the First

Amendment."  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted).  While

legal mail is afforded the greatest protection,[6] "greater protection [is afforded] to outgoing

--------

[6]"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  In order to state a claim for denial of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"  Id. (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).  "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . .  Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail."  Id. (citations omitted); see also Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (explaining that an action may not give rise to damages if there was "no showing . . . that the inmate's

mail than to incoming mail."  Id. (citations omitted).  "Restrictions . . . are justified only if

they further one or more of the substantial governmental interests of security, order, and

rehabilitation and must be no greater than is necessary or essential to the protection of the

particular government interest involved."  Id. (citations omitted).  However, in this case

Reeder has failed to plead with any sort of particularity with what mail defendants tampered.

Accordingly, defendants cannot reasonably specify the reasons, if any, why Reeder's mail

was impeded or opened.  As there are only conclusory allegations without reference to time,

place, person, or manner of tampering, such allegations are insufficient to establish a

constitutional violation.

Accordingly, defendants' motion should be granted as to this claim.


### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

punishment."  U.S. Const. amend. VIII.

_____

right of access to the courts was chilled or the legal representation was impaired.");
Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975) (holding that a single instance of
mail tampering which did not lead the plaintiff to suffer any damage was insufficient to
support a constitutional challenge).
        In this case, there are no contentions, and the record does not support a finding,
that the mail in question was legal mail.  Accordingly, while increased protections would
apply had the mail been legal in nature, there is no reason to presume this is the case.
Even if the mail was legal, there have been no allegations, nor would the record support,
the conclusion that defendants caused Reeder any actual injury as he has successfully
communicated with the court and participated in discovery and motion practice.
Accordingly, defendants' motion should be granted as to any claim that the mail in
question was legal mail.

### 1. Medical Care

This prohibition extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).

"Mere disagreement over proper treatment does not create a constitutional claim" as long

as the treatment was adequate.  <u>Chance</u>, 143 F.3d at 703.  Thus, "disagreements over

medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the

need for specialists . . .  are not adequate grounds for a section 1983 claim." <u>Sonds v. St.

Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

    In this case, defendants do not challenge that Reeder was suffering from a serious

medical condition.  Instead, they assert that Reeder has failed to allege deliberate

indifference by defendant Durmont.  Reeder contends that Durmont's examination was

intentionally quick and cursory, there was no follow up, and Durmont did not note or

acknowledge his complaints of swelling on his face and blackness around his eyes.  Compl.

¶ 12.  Additionally, Reeder contends that the photographs taken immediately after the

incident document these injuries, in addition to the swelling he sustained in his hand and

knee.  Dkt. No. 69, ¶ 6.  Construing these facts in the light most favorable to Reeder, he has

advanced a claim that Durmont's actions rose past a level of mere disagreement to one of

intentional disregard.

    Accordingly, defendants' motion on this ground should be denied.


## 2. Excessive Force

    Menard seeks judgment on Reeder's claim that Menard's use of mace during the

extraction constituted the use of excessive force.[7]  Inmates enjoy an Eighth Amendment

---

[7] Other defendants do not seek judgment on this claim which alleges that Martin,
Shutts, and Tucker used excessive force against him.  To the extent that Reeder claims

protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9); see also Wilkins v. Gaddy, ___ S. Ct. ___, 2010 WL 596513 (2010) ("The core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (citations

that any other defendants were involved in the excessive force, such claims are meritless because he has failed to identify which defendants were involved, or how they were involved.  Therefore, he has failed to establish the subjective prong of the Eighth Amendment analysis.  Accordingly, Reeder's failure to plead any such occurrences with any specificity is fatal to his claim.

omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Liberally construing Reeder's complaint, he has satisfied the objective component of the excessive force inquiry.  Reeder alleges that he suffered from excruciating pain in his fingers, face and neck; a swollen face, knee and fingers; black eyes; and a bloody ear. Compl. ¶¶ 5, 12; Dkt. No. 69, ¶ 6.  While these injuries are not attributable to Menard spraying mace in Reeder's face, the deployment of chemical weapons solely for the purposes of harming an inmate who had planned to cooperate and voiced such intentions to multiple parties represents a malicious use of force which would constitute a per se Eighth Amendment violation.  Blyden, 186 F.3d at 263; see also Wilkins, 2010 WL 596513 . Therefore, construing the facts in the light most favorable to Reeder, he has alleged an

18

Eighth Amendment claim against Menard for his malicious and intentional use of chemicals solely for the purpose of causing Reeder harm.  Compl. ¶¶ 9, 10, 18, 19, 21; Dkt. No. 69, ¶¶ 2, 7.

Accordingly, defendants' motion as to Menard on this claim should be denied.


### 3. Failure to Intervene

Liberally construing Reeder's complaint, he has alleged that defendants Grom and Moller were at the scene when he was assaulted and failed to intervene.  Prison officials are obliged to protect prisoners from known harms.  Farmer, 511 U.S. at 829.  "Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer."  Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted).  To establish liability, a plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  Id.

Viewing the facts in the light most favorable to Reeder, he has stated facts sufficient to contend that Grom and Moller failed to intervene.  While the two defendants may not have had advanced warning that Reeder would be assaulted during the extraction, it became clear when Reeder was saying he was going to be cooperative, laying on the ground, and not resisting, that Grom and Moller should intercede to prevent additional harm when they observed three officers punching and kicking a defenseless inmate.  Additionally, as discussed infra, a reasonable person in the officer's position would be well aware that such

19

a use of force was contrary to an individual's constitutional rights.  Thus, crediting Reeder's contentions, by standing idly by, Grom and Moller failed to take reasonable steps to intervene and terminate the violation of Reeder's constitutional rights.

Therefore, defendants' motion on this ground should be denied.

### 4. Failure to Protect

Eighth Amendment obligations also include the duty to protect prisoners from known harms.  Farmer v. Brennan, 511 U.S. 825, 829 (1970). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer, 511 U.S. at 832.  Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm," and (2) the prison office must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Matthews v. Armitage, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (internal citations and quotations omitted).

Reeder claims that defendant Nunez failed to protect him because Reeder contact

Nunez about the assault by staff, Nunez indicated that he would be transferring Reeder to a different facility, the transfer never occurred, and Reeder continued to be assaulted. Compl. ¶¶ 16, 33; Dkt. No. 69, ¶ 9. These allegations suffice to state the elements of a constitutional claim. Reeder was assaulted once by the corrections staff and the animosity continued. Reeder alerted Nunez to this problem and Nunez indicated he would resolve it by having Reeder transferred from the facility. Therefore, Nunez was aware that Reeder was in danger. Nunez failed to timely act and Reeder was allegedly subjected to more assaults. Liberally construing these allegations, Reeder has pleaded a claim for Nunez's failure to protect. Accordingly, defendants' motion as to Nunez should be denied.

Reeder also claims that Artus, Lavalle, and Racette had an executive "duty to protect inmates" with which they too failed to comply. Compl. ¶ 1. Such contentions are insufficient to allege an Eighth Amendment claim. Reeder fails to identify how these three individuals knew of any serious risk specific to his health and safety. As such, Reeder has failed to allege facts sufficient to establish the objective prong of the analysis as to these defendants. Accordingly, defendants' motion as to Artus, Lavalle, and Racette on this claim should be granted.


### 5. Conditions of Confinement[8]

"The Constitution does not mandate comfortable prisons but neither does it permit

---

[8] To the extent that Reeder's claims surrounding his cell deprivation could be construed as a conditions of confinement claim, such contentions are meritless. Dkt. No. 69, ¶ 14. First, such contentions were not advanced in his complaint and even a liberal reading of the complaint fails to indicate the allegation of any such claim. Moreover, even if such a claim was advanced, Reeder's temporary loss of his personal effects fails to allege that Reeder was deprived of any single, identifiable human need.

inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832. As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly, 76 F.3d at 480 (citations omitted).  Thus, "a prisoner may prevail only where he proves both an objective element – that the prison officials' transgression was sufficiently serious– and a subjective element – that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ."  Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted).

The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute an
> Eighth Amendment violation] when each would not do so alone . . .
> [such as] when the conditions have a mutually enforcing effect that
> produces the deprivation of a single, identifiable human need such
> as food, warmth, or exercise – for example, a low cell temperature
> at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate health or safety"  Farmer, 511 U.S. at 834 (citations omitted).

The Eighth Amendment "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).  "While no court has held that denial of food is a per se violation of a

22

prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation . . . may well be recognized as being of constitutional dimension." Id. (citations omitted).  In this case, Reeder specifically alleged that he failed to receive food on April 18, 22, 23, 24, 29, and May 1 and 3.  Compl. ¶¶ 13, 28, 30, 31.  Construing all allegations in the light most favorable to Reeder, seven days without meals in a twelve day period suffices to allege a constitutional deprivation.

Reeder names ten defendants who specifically participated in the denial of, or ignored his complaints regarding the failure to provide, his meals.  With respect to Moseley, Boulrice, Holdridge, Gittens, Baker, C. Trudeau, Poupore, Allen, Tetreault, and Besaw, Reeder has sufficiently alleged facts to establish deliberate indifference and a culpable state of mind.  Compl. ¶¶ 13, 28, 30, 31.  Accordingly, the motion as to those defendants should be denied.

However, Reeder also contends that Artus, Lavalle, Racette, Uhler, Lynch, Hicks, Marcil, Menard, and Matott, were generally and summarily informed of the deprivation of food but failed to intervene or correct it.  Compl. ¶ 13; Dkt. No. 69, ¶ 3.  Additionally, Reeder contends that R. Trudeau and Miner denied him food meals, but fails to allege with specificity any dates or times of such meal denials.  Compl. ¶¶ 13, 31.  This is in stark contrast to the previously identified defendants as to whom Reeder alleged date and meals.  Accordingly, with respect to these remaining eleven defendants, Reeder has failed to allege facts which would constitute deliberate indifference and defendants' motion as to these defendants should be granted.

**E. Fourteenth Amendment**

**1. Equal Protection**[9]

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

In this case, Reeder has only offered one statement mentioning equal protection, though it fails to establish how he was treated differently than other inmates.  There are no

_____

[9] In his response, Reeder contends that defendants R. Trudeau, Poupore, and Martin constantly harassed him by banging on his cell.  Such actions, without more, are similar to those cases alleging only verbal harassment.  These claims are insufficient to allege a constitutional violation.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983.").  Reeder did not assert, nor does the record support, any allegations of physical injury.  Therefore, even viewing the facts in the light most favorable to Reeder, these alleged statements, without more, are insufficient to state a constitutional claim.

contentions, and the record does not show, that Reeder was treated differently by staff than

other inmates.  All Reeder offers is a single, vague, conclusory allegation.  This allegation,

without more, is insufficient.  See, e.g., John Gil Const., Inc. v. Riverso, 99 F. Supp. 2d 345,

353 (S.D.N.Y. 2000) ("[A]ssertions of selective enforcement and racial animus [that] are

wholly conclusory and unaccompanied by any supporting factual allegations . . . are

insufficient to state a claim under either the Equal Protection Clause or 42 U.S.C. § 1983.")

(citations omitted).

Accordingly, defendants' motion should be granted on this ground.


## 2. Confiscation of Property

Reeder contends that Hicks and Menard were involved in the unlawful confiscation and

destruction of his personal property.  Compl. ¶ 32; Dkt. No. 69, ¶ 13.  An inmate has a right

not to be deprived of property without due process.  However, federal courts do not provide

redress for the deprivation of property if there is an adequate state court remedy which the

plaintiff can pursue.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  "An Article 78

proceeding permits a petitioner to submit affidavits and other written evidence, and where a

material issue of fact is raised, have a trial of the disputed issue, including constitutional

claims."  Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) (citations omitted); see also N.Y.

C.P.L.R. §§ 7803, 7804; Campo v. New York City Employees' Ret. Sys., 843 F.2d 96, 101

(2d Cir. 1988) ("Article 78 . . . provides a summary proceeding which can be used to review

administrative decisions.").  State law also provides that "[a]ny claim for damages arising out

of any act done . . . within the scope of . . . employment and in the discharge of the duties of

any officer or employee of the department [of corrections] shall be brought and maintained

25

in the court of claims as a claim against the state."  N.Y. Corr. Law § 24(2).

In this case, Reeder contends that there was an unconstitutional deprivation when his personal property was allegedly confiscated.  Such claims fail as a matter of law for several reasons.  First, the Article 78[10] procedure exists and affords an adequate state court remedy.  Second, because Reeder is suing for damages, he must pursue his claims here against New York State in the New York Court of Claims pursuant to Corrections Law § 24.  Thus, the correct venue to litigate these claims is in state court.

Accordingly, defendants' motion should be granted as to this claim.

## F. Failure to State a Claim[11]

An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government.  42 U.S.C. § 1983.  Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).

## 1. Right to an Investigation

Reeder contends that Artus and Racette summarily denied requests for investigations.

---

[10]N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2007) establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

[11] To the extent that Reeder has alleged "negligent action" by the named defendants, such allegations are meritless as they are not a cognizable basis for relief under § 1983.  See e.g., Davidson v. Williams, 474 U.S. 327, 328 (1986) (holding that negligent acts are insufficient to trigger liability in constitutional claims).

Even viewing the facts in the light most favorable to Reeder, he has failed to state a claim upon which relief can be granted because he has no constitutional right to an investigation. See Carrasquillo v. City of N.Y., 324 F.Supp.2d 428, 438 (S.D.N.Y. 2004) (holding that prisoners have "no constitutional or federal right to an investigation into . . . [an] accident, or to have his requests for an investigation answered").  Accordingly, defendants' motion as to this claim should be granted.[12]


## 2. Faulty Grievance Procedures

"Prisoners, including pretrial detainees, have a constitutional right of access to the courts . . . ." Bourden v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted) (citing Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate, effective, and meaningful" access to courts).  "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." Shell v. Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) (citations omitted); see also Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.") (citations omitted).  However, "[i]f prison

---

[12] To the extent that such contentions can be construed to allege that Reeder should be compensated for defendants' failure to comply with DOCS policies and protocols for investigating grievances, such contentions are also meritless.  Bolden v. Alston, 810 F.2d 353, 358 (2d Cir. 1987) ("State procedural requirements do not establish federal constitutional rights.  At most, any violation of state procedural requirements would create liability under state law . . . . ").

officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." Shell, 365 F. Supp. 2d at 370 (citations omitted).

In this case, Reeder cannot establish that he had a liberty interest which required constitutional protection.  Reeder has only alleged complaints about the grievance process as a whole, stating specifically that defendant Brousseau did not act upon grievances quickly enough or advocate strenuously enough for the inmates.  Compl. ¶ 7; Dkt. No. 69, ¶ 3.  Accordingly, defendants' motion on this ground should be granted.


### 3. Right to Criminal Investigations on Correctional Officers

Additionally, there exists no constitutionally protected right to file criminal charges against another. See Langworthy v. Dean, 37 F. Supp. 2d 417, 422 (D.Md.1999) ("[A] right to compel the prosecution of criminal activity does not exist."). Thus, to the extent that Reeder claims administrative defendants should have been acting upon any of his requests to compel criminal prosecution of any of the other named defendants, such claims are not cognizable on federal review.  Defendants' motion on this ground should be granted.


### G. Qualified Immunity

Defendants claim that even if Reeder's constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)

28

(McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry must be discussed with regard to Reeder's Eighth Amendment excessive force, medical indifference, failure to intervene, failure to protect, and conditions of confinement claims.  All other claims advanced in the complaint need not be reached because, as discussed supra, it has not been shown that defendants violated Reeder's constitutional rights.

There is no question that it was well settled on May 18, 2009 that the Eighth Amendment (1) prohibited a corrections officer from assaulting or intentionally inflicting harm on an inmate (Hudson, 503 U.S. at 9-10), and (2) required that inmates are to be provided "with . . . reasonable safety [as i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions," (Helling, 509 U.S. 33 (internal quotation marks and citations omitted)) whether that pertain to their medical care, conditions of confinement, or expectation for protection from corrections staff from dangerous situations.  Thus, accepting all of Reeders' allegations as true, qualified immunity cannot be granted to (1) DuMont for his involvement

29

with Reeder's medical care; (2) Menard, Martin, Shutts, and Tucker for their alleged

assertion of excessive force during the extraction; (3) Grom and Moller for their alleged

failure to intervene to assist Reeder during the extraction; (4) Nunez for his alleged failure to

protect Reeder from further assaults; and (5) Moseley, Boulrice, Holdridge, Gittens, Baker,

Trudeau, Poupore, Allen, Tetreault and Besaw for their alleged failure to provide Reeder

with adequate nutrition or respond to his complaints that he was being denied food.

However, defendants' motion should be granted in the alternative on this ground as to all

other defendants, for all other claims.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

judgment on the pleadings (Dkt. No. 65) be:

1. **DENIED** as to Reeder's claims of:

    A. Medical indifference against defendant Durmont;

    B. Excessive force against defendants Menard, Martin, Shutts, and Tucker;

    C. Failure to intervene against defendants Grom and Moller;

    D. Failure to protect against defendant Nunez;

    E. Deprivation of food against defendants Moseley, Boulrice, Holdridge, Gittens,

Baker, C. Trudeau, Poupore, Allen, Tetreault and Besaw; and

2. **GRANTED** as to all other claims and all other moving defendants; and

   **IT IS FURTHER RECOMMENDED** that the complaint be **DISMISSED** without prejudice

as to defendant John Doe.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 27, 2010
        Albany, New York

United States Magistrate Judge

31