**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RASZELL REEDER,

                        Plaintiff,

          v.                                                No. 09-CV-575
                                                              (DNH/CFH)

D. HOLDRIDGE, Captain; MENARD,
Sergeant; BAKER, Sergeant; RONALD
DURMONT, Registered Nurse and Examiner;
MOLLER, Correctional Officer; TUCKER,
Correctional Officer; MARTIN, Correctional
Officer; SHUTTS, C.O.; GROM, C.O.;
POUPORE, Correctional Officer; BOULRICE,
C.O.; MOSELEY, C.O.; TRUDEAU, Correctional
Officer; ALLEN, Correctional Officer; GITTENS, Correctional
Officer; BESAW, Correctional Officer;
TETREAULT, C.O.; NUNEZ, Inspector General,

                        Defendants.[1]

_____

**APPEARANCES:**                                    **OF COUNSEL:**

RASZELL REEDER
Plaintiff Pro Se
94-A-6388
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                ADRIENNE J. KERWIN, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

_____

          [1] Twenty defendants were dismissed from the case by a Decision and Order dated
September 9, 2010.  Dkt. No. 78.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Raszell Reeder ("Reeder"), an inmate in the custody of the New York State Department of Correctional and Community Services ("DOCCS"), brings this action against eighteen DOCCS employees contending they violated his constitutional rights under the Eighth Amendment[3].  Compl. (Dkt. No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 88.  Reeder opposes the motion.  Dkt. No. 92.  For the following reasons it is recommended that defendants' motion be granted in part and denied in part.


**I. Background**

The facts are related herein in the light most favorable to Reeder as the non-moving party.  See subsection II(A) infra.


**A. Excessive Force**

On April 22, 2009, Reeder assaulted defendant Poupore, a corrections officer, by throwing feces and urine contained in a milk carton on him during the breakfast hour.

_____

[2]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Also surviving the defendants' motion for a judgment on the pleadings was a conditions of confinement claim relating to Reeder's contentions of alleged deprivation of meals.  Dkt. No. 78 (Decision and Order accepting report recommendation), 77 at 21-23, 30 (report-recommendation concluding that the food deprivation claims against defendants Moseley, Boulrice, Holdridge, Gittens, Baker, C. Trudeau, Pourpre, Allen, Tetreault, and Beesaw survived the defendants' motion).  However, Reeder's response requests that the "Food Deprivation Claim be dismiss [sic] for lack of evidence against each of the defendants."  Dkt. No. 92 at 8.  Thus the claims and those defendants will not be addressed as they have been voluntarily dismissed by Reeder.

2

Compl. ¶ 17; Reeder Dep. (Dkt. No. 88-3) at 170-71; Dkt. No. 88-7 at 9, 16, 24, 26; see also  Dkt. No. 88-7 at 42-48 (evidence collection for staff harassment against Poupore); 63-83, 94-99, 101-06, 108-12 (photographs of Pourpore's uniform and the crime scene).[4] Defendant Hicks, a Sergeant, was notified to respond to the assault, but defendant Menard, also a Sergeant, reported to Reeder's cell instead.  Compl. ¶ 17.  At Reeder's cell, Menard observed that the lights in the back of the cell were off, a safety hazard which also precluded video recording.  Id. ¶¶ 4, 11, 22; Reeder Dep. at 179.

After the assault on Poupore occurred, Reeder informed defendants Matott, a sergeant, and Sprenger, a chaplain, as well as mental health staff, and Menard that he would comply with their orders and exit his cell without resistance.  Compl ¶¶ 10, 21; Reeder Dep. at 192-93; Dkt. No. 88-7 at 21-23, 25.  Menard contends that despite Reeder's claims to the contrary, "Reeder refused . . . LaMora's final order to comply with staff direction," and Menard was directed to extract Reeder.  Menard Decl. (Dkt. No. 88-7 at 1-6) ¶¶ 9-10; see also  Dkt. No. 88-7 at 10, 20, 22.  Reeder contends that when Menard reported to his cell, he ordered Reeder to give him the milk carton which contained the human waste, but that Reeder could not do that because the carton had already been thrown outside of his cell.  Reeder Dep. at 179-80; Dkt. No. 92 at 1.  The only thing that remained in Reeder's cell was an empty food tray, which Menard first told Reeder to pass to him through the feed up slot and then instructed him to put in the toilet.  Reeder Dep. at 180-82.  Reeder tried to best comply with both orders, ultimately successfully completing the latter.  Reeder Dep. at

---

[4] As there were multiple copies of the use of force and unusual incident reports attached to defendants' declarations, for ease and efficiency reference will only be made to the first set of reports included with Menard's declaration.  Dkt. No 88-7 at 7-114.

182.  Reeder maintains that there was never a container of milk with feces in his possession

and that he was always complaint with Mendard's orders.  Compl. ¶ 18; Reeder Dep. at

183.  Menard contends that Reeder failed to follow his direct orders with respect to the tray.

Menard Decl. ¶ 11; see also Dkt. No. 88-7 at 36 (misbehavior report written by Menard for

Reeder's failure to follow "a direct order to give back [his] feed up tray . . . .").

Menard then deployed two, one-second bursts of the chemical agent into the cell.[5]

Menard Decl. ¶ 12; Dkt. No. 88-7 at 10, 14, 16.  Menard asserts that Reeder continued to

fail to comply with Menard's direct orders to release the carton of milk in which the feces

were believed to have been stored.  Compl. ¶¶ 3, 8, 18; Reeder Dep. at 183; Menard Decl.

¶ 13; Dkt. No. 88-7 at 10, 14.  Menard then deployed four additional bursts of chemical

agents into the cell.  Menard Decl. ¶ 14; Dkt. No. 88-7 at 10, 14.  After Menard deployed the

chemical agents, an extraction team composed of defendants Martin, Shutts, Tucker, Grom,

and Moller, all corrections officers, attempted to enter the cell.  Compl. ¶¶ 4, 8-9, 20, 22, 25-

26; Dkt. No. 88-7 at 10.  When the team initiated their entry behind a plexi-glass shield,

Reeder charged at and pushed the shield from his cell in self-defense and then lay on the

floor without further resistance.  Compl. ¶ 11; Reeder Dep. at 188-91, 202; Menard Decl. ¶¶

15-16.  The incident report and defendants' declarations instead indicate that Martin and

Tucker pushed Reeder to the floor and took control of his upper torso and head area;

Shutts assisted with the restraints; Tucker took control of Reeder's arms and placed them

behind his back; and Moller videotaped the entire extraction.  Compl. ¶¶ 8-9; Menard Decl.

---

[5] DOCCS directives allow for "five applications of chemical agent[s], if after allowing sufficient time between applications, the inmate refuses to comply with lawful direction." Menard Decl. ¶ 23.  Two, one second bursts constitutes one application of the chemical agents.  Id.

4

¶¶ 16-17, 21; Dkt. No. 88-7 at 10, 14, 16, 28, 30-33; Martin Decl. (Dkt. No. 88-8 at 1-3) ¶¶ 6-8; Shutts Decl. (Dkt. No. 88-9 at 1-3) ¶¶ 6-8; Tucker Decl. (Dkt. No. 88-10 at 1-3) ¶¶ 6-7; Grom Decl. (Dkt. No. 88-11 at 1-3) ¶¶ 6-10; Moller Decl. (Dkt. No. 88-12 at 1-4) ¶¶ 6-7, 11-12.  Reeder alleges that Martin punched him in the face, slammed his head on the ground, kneed him in the head, and continued to assault him as he lie on the ground; Shutts attempted to pull his left knee out of his socket; Tucker squeezed his left hands with great force, attempting to break them; Grom used his body to block the still camera's view of the attack; and Moller stood at an angle, while operating the hand-held video camera, which purposefully omitted the recording of certain events during the extraction.  Compl. ¶¶ 4, 8, 9, 22, 24-26; Reeder Dep. at 194-98, 204, 206-12; Dkt. No. 92 at 2-4.  Reeder unequivocally states that both Grom and Moller knew he was being attacked and failed to do anything.  Reeder Dep. at 208-09, 212-14; Dkt. No. 92 at 5-6. The length of the assault, per Reeder's estimation, was approximately fifteen seconds.  Reeder Dep. at 198-99.  Defendants Martin, Schutts, and Tucker explicitly deny using excessive force, punching, kneeing, twisting, or otherwise injuring Reeder.  Martin Decl. ¶¶ 11-13; Schutts Decl. ¶ 13; Tucker Decl. ¶¶ 11-12.  Defendant Grom denied intentionally placing his body in a position to block cameras from capturing the restraint and extraction.  Grom Decl. ¶ 14.  Defendant Moller denies videotaping the incident in any fashion other than that approved by DOCCS directives, namely standing outside of the cell for safety reasons while the extraction occurs.  Moller Decl. ¶¶ 7, 17.  Moreover, Moller claims that "[a]t no point during the cell extraction did . . . any staff member assault Mr. Reeder . . . [or] compromise[ his safety in anyway]."  Moller Decl. ¶¶ 18-19.

    Reeder maintains that he was compliant, lying on his stomach, and cooperating

5

throughout the entire restraining period.  Reeder Dep. at 196, 202.  After applying the

restraints and standing Reeder on his feet, he was immediately taken to the shower for

decontamination.  Reeder Dep. at 185, 204-05; Menard Decl. ¶ 18; Dkt. No. 88-7 at 10, 14.

Reeder approximates that from the time he ran into the shield until he was restrained and

brought to his feet, approximately thirty-five seconds elapsed.  Reeder Dep. at 203.  Reeder

estimates that he was exposed to the chemical agents for approximately fifteen minutes.

Reeder Dep. at 185.

    Reeder claims that defendant Nunez failed to protect him because Reeder contacted

Nunez about the assault by staff, Nunez indicated that he would be transferring Reeder to a

different facility, the transfer never occurred, and Reeder continued to be assaulted.

Compl. ¶¶ 16, 33.  Specifically, in his deposition testimony, Reeder explained that Nunez

spoke to Reeder once while he was housed in SHU on or about October of 2008.  Reeder

Dep. at 27-28, 235-36.  Nunez told Reeder that he was to be transferred to a different

facility due to his continued involvement in a variety of instances.  Reeder Dep. at 236-38.

Reeder never received any written confirmation memorializing this conversation.  Reeder

Dep. at 238-39.  However, defendant Nunez has been employed as an investigator to the

Narcotics Unit since March of 2005 and thus has never worked an internal affairs case

occurring in Clinton, or elsewhere, dealing with staff assaults on inmates.  Nunez Decl. (Dkt.

No. 88-13) ¶¶ 4-12.  Accordingly, Nunez declared that he never interviewed Reeder,

promised him a transfer to another correctional facility, or participated in any written

correspondence with Reeder.  Nunez Decl. ¶¶ 12-14.  While Nunez "did receive

correspondence from [Reeder] misaddressed to [him] concerning an alleged assault . . .

[he] did not act on such letters[, i]nstead . . . properly referr[ing] them to the . . . Internal

6

Affairs Unit . . . ."  Nunez Decl. ¶¶ 15-16.


### B. Medical Care

After the incident, Reeder was examined by defendant Dumont, a nurse, and

photographed.  Compl. ¶¶ 5, 12; Menard Decl. ¶ 19; Dkt. No. 88-7 at 10; Dkt. No. 88-7 at

50-54, 86-91 (photographs of Reeder).  Reeder contends that the chemical agents affected

his eyes, nose, and ability to breathe.  Reeder Dep. at 184-85.  Reeder also contends that

he specifically complained about pain and injuries to his ears, wrist, leg, and face.  Reeder

Dep. at 215-17.  Reeder also testified that his ear had never bled and that he had never had

pain or problems with his ears, fingers, knee, or face prior to the use of force.  Reeder Dep.

at 223.

Dumont examined Reeder immediately after his decontamination shower, while he was

in shorts waiting in the holding room.  Dumont Decl. (Dkt. No. 88-6) ¶¶ 4-6.  Dumont

conducted a visual examination, ordering Reeder to lift his arms and turn around so that he

could see all angles of Reeder's body, as well as asking Reeder to open his mouth, stick

out his tongue, and lift his upper and lower lips to check for oral damage.  Dumont Decl.

¶¶ 7-8.  Durmont's report indicated that Reeder's eyes were reddened from exposure to the

chemical agents, and Reeder was sweating.  Compl. ¶ 12; Durmont Decl. ¶¶ 10, 12-13.

Presumably in response to Reeder's complaints, Dumont specifically noted that he did not

see any facial swelling or blood coming from Reeder's ear.  Dumont Decl. ¶¶ 11-12;

see also Dkt. No. 88-6 at 5 (ambulatory health record indicating that Dumont's exam

revealed reddened eyes and water dripping from Reeder, but "no swelling noted to face[

and no blood to [right] ear . . . ."), 6 (inmate injury report documenting Reeder's complaints

of facial swelling but also noting only reddened eyes and sweat, no blood from his right ear or facial swelling); Dkt. No. 88-7 at 34.  Dumont determined that Reeder was not suffering from any injuries and thus required no further treatment.  Compl. ¶ 5; Dumont Decl. ¶¶ 9, 14; Dkt. No. 88-6 at 7 (use of force report concluding that there were "no injuries noted . . . . "); Dkt. No. 88-7 at 10, 17, 18.

However, Reeder alleges this examination was cursory as Dumont failed to note the blood coming out of his ear, his swollen fingers, knee and face, his scars, his blackened eyes, or the pain in his fingers, face and neck.  Compl. ¶ 5; Reeder Dep. at 214-. Specifically, Dumont stood three feet away and only visually inspected Reeder for ten seconds, never palpating his face which was covered with voluminous facial hair which could have concealed the swelling.  Dkt. No. 92 at 4.  Additionally, Dumont never reexamined Reeder after April 22, prescribed physical therapy, or provided x-rays to ensure that there were no new injuries and that the pre-existing ones had not worsened.  Compl. ¶ 12; Reeder Dep. at 218-19.  However, medical records indicate that subsequent to April 22nd, Reeder next visited medical weeks later in May of 2009 for complaints completely unrelated to the alleged use of force.  Dkt. No. 90.


## C. Grievances

Reeder contends that "Clinton Prison Administration is a facility that hid evidence and agree with inmates being assaulted, harass [sic], never showing concern, accepting captains, Lts., Sgts.,  Correction Officers falsifying investigation reports.  They always doing incomplete investigations, it is a facility administration and with corrections personnel thats committed to retaliation conspiracy."  Compl. ¶ 14.  During his deposition, Reeder outlined

8

the DOCCS grievance proceedings, detailing each step of review, appeal, and the appropriate time lines for which to file grievances.  Reeder Dep. at 29-31.

There is no record of Reeder ever filing, or appealing to CORC, a grievance regarding the alleged inadequate medical treatment he was provided by Dumont.  Dkt. No. 88-4& 88-5 (listing opened and closed grievances filed throughout Reeder's incarceration without any mention of inadequate medical treatment on or about April 22, 2009).  However, Reeder contends that he "did [e]xhaust his Administrative Remedies [because] . . . his grievance was sent to the Superintendent from the grievance office and [Reeder] sent complaint to Superintendent concerning Medical Indifference."  Dkt. No. 92 at 4.

## II. Discussion

Reeder contends his Eighth Amendment rights were violated when various defendants subjected him to excessive force and when Dumont was deliberately indifferent to his serious medical needs.  Defendants seek dismissal because Reeder failed to (1) exhaust his administrative remedies; (2) establish the personal involvement of Nunez; or (3) state any constitutional claims.  Defendants also contend that are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings,

9

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).   However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

10

**B. Failure to Exhaust**

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies

prior to bringing any suits challenging prison conditions, including federal civil rights cases.

Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83

(2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S.

at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall

confinement is necessarily a condition of that confinement."  Jenkins v. Haubert, 179 F.3d

19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative

grievance process does not provide for all the relief requested by the inmate.  Nussle, 534

U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has

recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175

(2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion for an

inmate in DOCCS custody is generally achieved through the IGP.  See N.Y. Comp. Codes

R. & Regs. tit. 7, § 701.1, et seq.; see also note 3 supra. Allegations of staff harassment are

subject to an expedited procedure whereupon the complaint is first reviewed by the

Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal

processing.  N.Y. Comp. Codes. R & Regs. tit. 7, § 701.8.  Included within the IGP's

exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and

receive a response from CORC prior to filing a federal lawsuit.  Torres v. Carry, 672 F.

Supp. 2d 338, 344 (S.D.N.Y. 2009); see also N.Y. Comp. Codes R. & Regs. tit. 7 §

701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance,

and transmit its decision . . . within 30 calendar days").  Disagreement with the

superintendent's decision in the expedited review also requires an appeal to CORC.  N.Y.

Comp. Codes. R & Regs. tit. 7, § 701.8 (g)-(h); see also Espinal v. Goord, 588 F.3d 119,

125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and

its appeal mechanism through CORC).   Exhaustion must precede filing a lawsuit.  Neal v.

Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed

therefore is insufficient.") abrogated in part on other grounds by Porter, 534 U.S. 516.

The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district
> court must apply a three-part test: First, the court must determine
> whether administrative remedies in fact were available to the
> prisoner.  Second, if such remedies were available, the court must
> determine whether the defendants' own actions inhibited the
> inmate's exhaustion of administrative remedies, thereby requiring
> that one or more of them be equitably estopped from raising the
> failure to exhaust as a defense.  Finally, if administrative remedies
> were available and the defendants are not estopped, the court must
> determine whether any special circumstances justify the prisoner's
> failure to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y.2010) (internal citations omitted);

see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above

test as the appropriate method for excusing failure to exhaust given the present state of all

Second Circuit opinions).  "Unavailability of administrative remedies . . . is an objective

[test]: that is, would a similarly situated individual of ordinary firmness have deemed them

unavailable."  Kasiem v. Switz, 756 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2010) (internal

quotation marks and citations omitted).  Estoppel occurs when "an inmate reasonably

understands that pursuing a grievance through the administrative process will be futile or

impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance

forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure."

12

Id. at 577 (internal quotation marks and citations omitted).  If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable.  Id.  Special circumstances exist when an inmate's failure to comply can be justified.  Id. (citations omitted).  Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way."  Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).

    In this case, DOCCS records do not show any grievances which were filed, or appealed, regarding inadequate medical care surrounding the use of force incident.  In Reeder's response, he contends that he did file a complaint to the Superintendent, though he fails to include a copy of the complaint, grievance, or subsequent appeals.  Thus, Reeder's conclusory claims are insufficient to defeat the computer print outs generated by the grievance program.  Moreover, Reeder fails to contend that he was unaware of the grievance procedures, that they were unavailable to him, or that special circumstances existed to excuse his failure to exhaust.  Conversely, Reeder's deposition testimony indicated that he was fully aware of how the process worked and his grievance history illustrates that he successfully filed and appealed other various grievances both prior and subsequent to the alleged use of force.  Reeder has therefore failed to exhaust his administrative remedies and defendants' motion should be granted on this ground.


### C. Personal Involvement

    "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Defendants contend, essentially, that Nunez was not personally involved in any of the events in Reeder's complaint.  Defs. Memoranda of Law (Dkt. No. 88-25) at 15-16.  Reeder contends, without any support, that Nunez visited him while he was in SHU, spoke with him, and promised him a transfer to a different facility.  Nunez's testimony indicates differently. Nunez's declaration indicates that he works for a narcotics unit in the Inspector General's Office, not the Internal Affairs unit which is charged with investigating staff assaults, and thus has never been assigned a case involving staff assault.  Moreover, Nunez has never met, interviewed, corresponded or visited Reeder.  While Reeder sent him letters concerning his grievances, receipt of complaints alone is insufficient to establish personal involvement.  See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004)

14

(citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).  Moreover, when Nunez received Reeder's complaints, he promptly forwarded them to the correct unit to address Reeder's concerns. This too is insufficient to establish personal involvement.  See Liner v. Goord, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004) ("Where a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action) (citing cases).

Accordingly, defendants' motion on this ground is granted.


### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  Eighth Amendment obligations include the duty to protect prisoners from other known harms.  Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  It also includes the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer, 511 U.S. at 834. Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.

15

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

### 1. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

16

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Defendants' contend that Reeder's claims are insufficient to establish an Eighth Amendment violation because the use of the chemical agents by Menard was justified, the alleged assault never occurred and, even if it had, it lasted only fifteen seconds which was insufficient to employ malicious and sadistic force.  Reeder contends that the use of chemical agents was not justified because he told various defendants and third parties that he would be compliant with orders after assaulting Pourpre, and he was then compliant with those orders.  Reeder contends that there was no container with human waste in his cell, it had been thrown into the hallway, and that he did everything which he was instructed to do with his feed up tray.  Moreover, while it is undisputed that Reeder charged into the shield and extraction team, Reeder contends that he laid on the ground on his own accord and did not resist.  Despite Reeder's compliance, in the subsequent fifteen seconds he was punched in the face, slammed into the ground, and subjected to having his fingers and leg

17

twisted and torqued in an attempt to cause great pain and injury.  While medical records do not confirm the injuries which Reeder contends to have incurred, any or no injuries resulting from the events as described by Reeder could represent a per se constitutional violation. See Baskerville v. Mulvaney, 411 F.3d 45, 48-49 (2d Cir. 2005).

Similar defects in defendants' argument are noted when evaluating the subjective prong of the analysis.  Defendants' contend that on the date in question, Reeder was continually non-compliant with their direct orders which justified the dispersion of the chemical agents. Moreover, Reeder charged the extraction team which led to his physical take down by two officers and quick application of restraints.  This application occurred without any more than normal physical force typically asserted during a restraint.  Conversely, Reeder claims that he was consistently compliant with all directives and the chemical agents were unwarranted because he was being cooperative.  Moreover, even though he ran at the extraction team, Reeder contends that he did lie face-down on the floor immediately upon exiting his cell and did not resist any of defendants' actions.  Therefore, Reeder's contentions that he was struck, his head was slammed into the ground, and his joints were contorted were disproportionate to the amount of force required.  These actions are reasonable to occur in fifteen seconds, but do not mean that the actions were warranted or an appropriate use of force.

This competing evidence rests on the credibility of Reeder on the one hand and defendants on the other.  In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party, leaves no choice but to credit Reeder's version of events for purposes of this motion.  See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment

must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (citing cases).

As described above, Reeder's evidence would establish that both the deployment of the chemical agents and the use of force was an unnecessary tactic implemented not to restore or maintain order, but to maliciously assault an inmate for no apparent reason.  Moreover, such actions in assaulting this inmate could constitute a per se constitutional violation. Thus, viewing the facts in the light most favorable to Reeder, he has proffered sufficient evidence to raise an issue of fact as to the objective prong of the Eighth Amendment analysis to require resolution by a jury.  Furthermore, if Reeder's evidence is credited, the actions of Menard, Martin, Shutts, and Tucker could be found wanton and malicious.  The need for force in response to behavior which was both compliant and non-threatening could be deemed malicious.  This conduct could be found unreasonable and unnecessary to sustain institutional order and safety.  Thus, such actions, as alleged by Reeder, are more than sufficient as well to raise a question of material fact as to the subjective prong of the Eighth Amendment analysis.

Accordingly, defendants' motion for summary judgment on this ground should be denied.


### 2.  Medical Care

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson, 503 U.S. at 9).  Because there is no distinct litmus test, a serious medical condition

is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Reeder claims that he received insufficient medical care after the use of force. However, it is undisputed that Dumont examined Reeder almost immediately after he was decontaminated. Dumont noted Reeder's complaints, and clearly acknowledged them as his records indicate that Reeder did not have facial swelling and that the only liquid coming from his ear was sweat and not blood. Dumont also had Reeder raise and lower his arms, rotate, lift his lips, stick out his tongue, and open his mouth so that Dumont could visually

inspect all of his body.  Dumont did note that Reeder's eyes were irritated from the chemical exposure, that his face was not swollen, and that his ear was not bleeding.  These notes mitigate against claims of deliberate indifference because they indicate a careful visual examination and attention to those areas which Reeder indicated were injured.

To the extent that Reeder contends that Dumont needed to palpate his face, given his facial hair, to properly examine him, such contentions essentially concern the manner of examination and diagnosis.  Such allegations are insufficient to establish an Eighth Amendment claim.  Sonds, 151 F. Supp. 2d at 312.  Moreover, to the extent that Reeder claims he required additional follow up care, such claims are also belied by his medical record which indicates that he next requested medical attention a few weeks later for a completely unrelated manner.  The absence of sick call entries vitiates against claims of continuing medical need or deliberate indifference.

Therefore, defendants' motion is also granted on this ground.


### 3. Failure to Intervene

Liberally construing Reeder's complaint, he has alleged that defendants Grom and Moller were at the scene when he was assaulted and failed to intervene.  Prison officials are obliged to protect prisoners from known harms.  Farmer, 511 U.S. at 829.  "Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer."  Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted).  To establish liability, a plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's

constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Id.

Even viewing the facts in the light most favorable to Reeder, he has failed to raise a question of material fact regarding Grom and Moller's actions.  Reeder first contends that seeing the chemical agents being deployed was significant in alerting the defendants to the danger he was facing.  However, such actions would not warning a reasonable person that a constitutional violation was about to occur.  Second, while Reeder's claims that fifteen seconds of being assaulted could constitute excessive force on behalf of the defendants on the extraction team, it is unreasonable to conclude that in those fifteen seconds either Grom or Moller was confronted with a reasonable opportunity to identify a constitutional violation in which they could intervene.  See O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (holding that an Eighth Amendment violation does not occur for failing to intervene when the assault occurs so quickly that the defendant "had no realistic opportunity to attempt to prevent them[ because the event was not] of sufficient duration to support a conclusion that an officer who stood by without trying to assist . . . became a tacit collaborator.").

Accordingly, defendants' motion is granted on this ground.


## G. Qualified Immunity

Defendants claim that even if Reeder's constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)

(McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry must be discussed with regard to Reeder's Eighth Amendment excessive force, medical indifference, failure to intervene, failure to protect, and conditions of confinement claims.  All other claims advanced in the complaint need not be reached because, as discussed supra, it has not been shown that defendants violated Reeder's constitutional rights.

There is no question that it was well settled on May 18, 2009 that the Eighth Amendment prohibited a corrections officer from assaulting or intentionally inflicting harm on an inmate.  See Hudson, 503 U.S. at 9-10.  Thus, accepting all of Reeders' allegations as true, qualified immunity cannot be granted to Menard, Martin, Shutts, and Tucker for their alleged assertion of excessive force during the extraction.  However, defendants' motion should be granted in the alternative on this ground as to all other defendants, for all other claims.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

summary judgment  (Dkt. No. 88) be:

1. **DENIED** as to Reeder's claims of excessive force against defendants Menard,

   Martin, Shutts, and Tucker; AND

2. **GRANTED** as to all other claims and all other moving defendants and that the

   complaint be **DISMISSED** with prejudice as to those defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen

(14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c)

(citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN

TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89

(2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  September 5, 2012
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge